1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8

9   DAVID MCKELLIP
                                                    2:05-CV-00897-BES-GWF
10                  Plaintiff,

11        vs.
                                                    **ORDER**
12   LAS VEGAS METROPOLITAN POLICE
     DEPARTMENT; OFFICER JOHN DOE,
13   individually and in his official capacity;
     DOES I through X and ROES XI through
14   XV,

15                  Defendant.
     _____
16

17        Before the Court is Defendant LVMPD's ("LVMPD") Motion for Summary Judgment

18   (#15), which was filed on April 26, 2006, and Plaintiff's Counter Motion for Leave to Amend

19   Complaint (#19). Plaintiff filed his counter motion on May 17, 2006 along with his Opposition

20   to Defendant's Motion for Summary Judgment (#17).  On May 22, 2006, Defendant LVMPD

21   filed its Reply to Plaintiff's Opposition to Motion for Summary Judgment (#20), as well as

22   its Opposition to Plaintiff's Counter Motion for Leave to Amend Complaint (#21).

23                                **I. BACKGROUND**

24        The facts of this case are in dispute.  However, for the purposes of Defendant's

25   Motion for Summary Judgment, this Court will view the facts in the light most favorable to

26   the non-moving party.  Herrera v. Las Vegas Metro. Police Dept., 298 F.  Supp. 2d 1043,

1052 (D. Nev. 2004) (citing Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990).

Therefore, with the exception of the procedural facts, this Court assumes, without finding,

the truth of those facts alleged by Plaintiffs, which are supported by the record. Id. (citing

Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736 (9th Cir. 2000).

On July 26, 2003, Plaintiff visited the Library Gentleman's Club ("Library") on Boulder Highway in Las Vegas, Nevada; he stayed there until it closed at 6 a.m. the following morning.  At that time, Plaintiff  gathered his bicycle intending to ride it home.   Within moments he was confronted by three men who attempted to steal his bicycle.   The altercation was witnessed by John Dawson who called 9-1-1.  Officer Michael Gomez responded to the call and met Plaintiff at the scene.  Upon his arrival, Officer Gomez found Plaintiff crossing the street on his bicycle outside the crosswalk, the altercation apparently having ended a few minutes prior.  Officer Gomez called over the loud speaker for him to use the nearest crosswalk.   Plaintiff ignored the officer's request and kept riding.   In response, Officer Gomez pulled his car up onto the curb, stopping Plaintiff's progress, and causing him to fall from his bicycle.  Officer Gomez then ordered him to stand in front of the police car.  An argument then ensued between Plaintiff and Officer Gomez.   Thereafter, Officer Gomez grabbed Plaintiff from behind, lifted him onto the patrol car, and began to pound his head and ear into the hood of the car causing various injuries.  After being slammed onto the patrol car six to eight times, two other officers who had arrived on scene diffused the altercation and handcuffed Plaintiff.  Plaintiff then requested an ambulance and one was called to the scene.  Plaintiff was examined by medical personnel but was not transported to the hospital.  Instead, he was cited for jaywalking and released.  Plaintiff sought medical treatment the next day, and again five days later, on August 2, 2003.  As a result of the foregoing events, Plaintiff initiated this action against Defendants LVMPD and fictitiously named Defendants.

///

1

## II. ANALYSIS

There are two interrelated issues before the Court here. The threshold question is whether Plaintiff's Motion for Leave to Amend Complaint will be granted.  That issue having been resolved, the Court must then determine the viability of Plaintiff's claims in light of Defendant's Motion for Summary Judgment.

**A.  Plaintiff's Motion for Leave to Amend (#19)**

Plaintiff's Motion for Leave to Amend arises out of his joinder of fictitiously named Defendants. (Compl. (#1) 1.) Ostensibly, Plaintiff joined these defendants with the intention of amending his Complaint and inserting the appropriate names once they were revealed to him in the course of discovery.  Though normally a simple matter, that process has been complicated by Plaintiff's failure to move to amend his Complaint before the expiration of the time allowed to do so as prescribed by the Stipulated Discovery and Scheduling Order ("Scheduling Order") (#6).  The Scheduling Order was stipulated to by the parties and entered by the Magistrate Judge in accordance with the provisions of Fed. R. Civ. P. 16. (Stip. Disc. and Sched. Order (#6) 1.)  The  ramifications of the Scheduling Order are at issue here.

Plaintiff argues that the issuance of the Scheduling Order notwithstanding, the terms of Fed. R. Civ. P. 15(a) provide the standard by which the Court should consider his Motion for Leave to Amend.  (Pl. ['s] Counter to Mot. Summ. J. (#19) 4-5.)  Fed. R. Civ. P. 15(a) provides that the leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a).  Plaintiff argues that the liberal nature of Fed. R. Civ. P. 15(a)'s amendment standard should afford him the opportunity to amend here.  Id. at 5. Defendant LVMPD disagrees. (Opp'n to Pl ['s] Counter Mot. (#21) 4-5.)  Defendant LVMPD contends that the issuance of a scheduling order triggers the modification standard of Fed. R. Civ. P. 16(b), which supersedes the amendment standard provided by Fed. R. Civ. P. 15(a).  Id. at 4. More specifically, Defendant LVMPD argues that upon the issuance of a Fed. R. Civ. P. 16

scheduling order, any attempt to amend pleadings after the expiration of the time allotted in the order must be considered as a de facto motion to modify the scheduling order, and it must be reviewed under the standard provided in Fed. R. Civ. P. 16(b). Id. at 5. In relevant part, Fed. R. Civ. P. 16(b) provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." FED. R. CIV. P. 16(b). Defendant LVMPD suggests that Fed. R. Civ. P. 16(b)'s "good cause" standard is more stringent than that available under Fed. R. Civ. P. 15(a) and, accordingly, should preclude Plaintiff from amending his Complaint. Id. This Court concurs.

"[O]nce a pretrial scheduling order has been filed pursuant to Fed. R. Civ. P. 16 establishing timetables for amending pleadings, a motion for leave to amend is governed first by Fed. R. Civ. P. 16, and only secondarily by Fed. R. Civ. P. 15(a)."[1] Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999) (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-608 (9th Cir. 1992). Thus, the moving party must first show "good cause" for leave to modify the scheduling order before the court may consider the motion for leave to amend under the standard of Fed. R. Civ. P. 15(a).[2] Fed. R. Civ. P. 16(b)'s "good cause" standard insists on diligence on the part of the moving party. Id. at 607-608. As the Ninth Circuit has stated:

---

[1] In cases where the scheduling order itself contains a separate standard for the amendment of pleadings after expiration of the time allotted, "extraordinary circumstances" for example, the applicability of Fed. R. Civ. P. 16's "good cause" standard is not affected. See Johnson, 975 F.2d at 610. Here, it is irrelevant since the Scheduling Order contains no such standard. (Stip. Disc. and Sched. Order 2.)

[2] It should be noted that Fed. R. Civ. P. 16's "good cause" standard for leave to modify a scheduling order is consistent with Local Rule 26-4 which states that "[a]pplications to extend any date set by the discovery plan, scheduling order, or other order must . . . be supported by a showing of good cause for the extension."

A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15." Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, then the inquiry should end. Id. (citations omitted).

Here, the parties filed the Scheduling Order on November 10, 2005, thereby triggering the requirements of Fed. R. Civ. P. 16(b). In it, the parties stipulate that "[t]he last day to file motions to amend the pleadings or add parties . . . is January 3, 2006." (Stip. Disc. and Sched. Order (#6) 2.) Plaintiff filed his Motion for Leave to Amend on May 17, 2006, well beyond the deadline identified in the Scheduling Order. Construing Plaintiff's motion to amend as a motion to modify[3], Plaintiff has failed to exhibit the requisite diligence.

Plaintiff's sole excuse for not having complied with the obligations of the Scheduling Order revolves around the lonely assertion that Defendants refused to release Officer Gomez's name prior to the litigation. (Pl. ['s] Counter to Mot. Summ. J. (#19) 4.) That assertion, however, is undermined by the fact that on September 1, 2005, Defendant LVMPD supplied Plaintiff with Officer Gomez's Use of Force Report and his Contact Report with its Initial Disclosure Statement. (Mot. Summ. J. (#15) Ex. D 8-9.) Each of these documents clearly identifies Officer Gomez as the officer who struck Plaintiff. Additionally, Officer Gomez is listed in Defendant LVMPD's Initial Disclosure Statement as a witness expected to testify as a to the facts and circumstances giving rise to the injuries and

---

[3]Some courts have required a formal motion to modify before entertaining subsequent motions to amend; however, for the purposes of this inquiry, the court is not without the discretion to construe a motion for leave to amend as one seeking modification. See Johnson, 975 F.2d at 609.

1    damages suffered by Plaintiff.  Id. at 3.  Having been in possession of these documents

2    since September 1, 2005, four months before the expiration of time to amend pleadings,

3    and with a critical element of Plaintiff's claims hinging on the identification of the offending

4    officer, it defies logic to suggest that Plaintiff was diligently pursuing his claims such that his

5    failure to name the appropriate officers was justified.  Instead, Plaintiff pursued his claims

6    carelessly, which as the Ninth Circuit has stated,  "is not compatible with a finding of

7    diligence and offers no reason for a grant of relief."  Johnson, 975 F.2d at 609 (citing

8    Engleson v. Burlington Northern R.R. Co., 972 F.2d 1038, 1043 (9th Cir. 1992).  Moreover,

9    that Plaintiff may be prejudiced by this ruling is irrelevant, given that where a lack of

10   diligence has been found, the inquiry must end.  Johnson, 975 F.2d at 609.

11       The Court's conclusion is supported by the Ninth Circuit's unpublished opinion in

12   Gripp v. County of Siskiyou, 1996 WL 726630 (9th Cir. Dec. 11, 1996).[4]  In Gripp, the

13   plaintiff brought a civil rights claim under 42 U.S.C. § 1983 alleging excessive force against

14   several police officers and a failure to train claim against the County of Siskiyou.  Id. at *1.

15   Despite the fact that Gripp was aware of the names of the officers in question, he filed his

16   complaint naming only "unknown officers."  Id.  After failing to amend his complaint before

17   the expiration of the time allowed by the scheduling order, the district court refused to grant

18   him leave to do so.  Id.  In response to Gripp's argument on appeal that he would be

19   prejudiced if not allowed to name the individual officers, the Ninth Circuit stated that "[a]

20   showing of prejudice . . . is not enough.  Once it is shown that a party was not diligent, no

21   amount of prejudice will satisfy the good cause standard."  Id. at *2 (citing Johnson, 975

22

23           [4]The Court's citation to this unpublished opinion is made in
     accordance with the Ninth Circuit's rule regarding the citation
24   of unpublished opinions.  Thus, it is cited not as controlling
     authority but as persuasive evidence of a factually similar case.
25   Ninth Cir. R. 36-3(b)(ii); see also Herring v. Teradyne Inc., 256
     F. Supp. 2d 1118, 1128 n.2 (S.D. Cal. 2002).  The case is
26   attached as a Appendix A.

1  F.2d at 609).  Therefore, as a result of Plaintiff's failure to pursue the amendment of his

2  claim diligently, the Court denies his motion for leave to amend.

3  **B. Plaintiff's use of "Doe" Defendants**

4         Having denied Plaintiff's Motion for Leave to Amend, the issue remains as to whether

5  Plaintiff may proceed against fictitiously named Defendants absent proper amendment.

6  The answer is no.  Though the Federal Rule of Civil Procedure, 28 U.S.C.A., do not

7  explicitly prohibit the naming of fictitious persons as defendants, the Ninth Circuit's response

8  to their use has been cool at best.  The Ninth Circuit has stated:

9           These John Doe complaints are dangerous at any time.  It is inviting disaster
            to allow them to be filed and to allow fictitious persons to remain defendants
10          if the complaint is still of record. . . . Although the fact [is] that the Rules of
            Civil Procedure, 28 US.C.A., contain no prohibition upon the subject, there is
11          no authority of which we are aware for the joining of fictitious defendants in
            an action under a federal statute.  Sigurdson v. Del Guercio, 214 F.2d 480,
12          482 (9th Cir. 1956).

13  Moreover, the Ninth Circuit has spoken approvingly of district courts that have dispatched

14  fictitious persons on their own motion.  Id. (citing Molnar v. Nat'l Broad. Co., 231 F.2d 684

15  (9th Cir. 1956); Roth v. Davis, 231 F.2d 681 (9th Cir. 1956)).

16         Fed. R. Civ. P. 21 provides that "[p]arties may be dropped or added by order of the

17  court on motion of any party or of its own initiative at any stage of the action and on such

18  terms as are just."  FED. R. CIV. P. 21.  Given the Ninth Circuit's disapproval of the naming

19  of fictitious parties, under the authority provided by Fed. R. Civ. P. 21, this Court hereby

20  dismisses fictitiously named Defendants Officer John Doe, Does I through X, and Roes XI

21  through XV from this action.

22  **C. Defendant LVMPD's Motion for Summary Judgment**

23         Upon dismissing the fictitiously named defendants from this action, the only issue

24  that remains is the viability of Plaintiff's claims against Defendant LVMPD.  Here, Plaintiff

25  asserts violations of 42 U.S.C. § 1983 and various provisions of Nevada state law.  (Compl.

26  (#1).)

1    Summary judgment "shall be rendered forthwith if the pleadings, depositions,
2  answers to interrogatories, and admissions on file, together with the affidavits, if any, show
3  that there is no genuine issue as to any material fact and that the moving party is entitled
4  to judgment as a matter of law." FED.R.CIV.P. 56(c).  A material issue of fact is one that
5  affects the outcome of the litigation and requires a trial to resolve the differing versions of
6  the truth.  Lynn v. Sheet Metal Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).
7  The burden of demonstrating the absence of a genuine issue of material fact lies with the
8  moving party, and for this purpose, the material lodged by the moving party must be viewed
9  in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S.
10  144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).

11    Any dispute regarding a material issue of fact must be genuine—the evidence must
12  be such that "a reasonable jury could return a verdict for the nonmoving party."  Id.  Thus,
13  "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
14  nonmoving party, there is no genuine issue for trial" and summary judgment is proper.
15  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).   "A mere
16  scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which
17  the evidence is reasonably susceptible; it may not resort to speculation."  British Airways
18  Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).  The evidence must be significantly
19  probative, and cannot be merely colorable.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
20  250 (1986).  Conclusory allegations that are unsupported by factual data cannot defeat a
21  motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

22  **1. Municipal Liability under 42 U.S.C. § 1983**

23    In Section VI of his Complaint, Plaintiff alleges that he was deprived of his
24  constitutional rights as a result of Defendant LVMPD's "lack of training and supervision of
25  Defendants." (Compl. (#1) ¶ 42.) Plaintiff asserts that Defendant LVMPD "had notice that
26  their training methods were inadequate and deliberately chose not to remedy them . . .

especially with [regard] to the named officers herein." Id. at ¶ 43.  Plaintiff claims that the lack fo proper training and supervision was the "result of deliberate indifference by Defendant LVMPD, and said indifference constituted the direct, actual and proximate tacit authorization of said acts against Plaintiff . . . ." Id. at ¶ 44.

A municipal entity may be subject to suit where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-691 (1978).  Thus, to be successful, a plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and, (4) that the policy is the 'moving force behind the constitutional violation.' " Plumeau v. School Dist. No. 40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (quoting Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992)); see also Monell, 436 U.S. at 691 (holding that a municipality cannot be held liable under § 1983 on a respondeat superior theory).  In the context of summary judgement, "a plaintiff must offer enough evidence to create a genuine issue of material fact as to both the existence of a constitutional violation, and municipal responsibility for that violation." Herrera, 298 F.  Supp. 2d 1043, 1052 (D. Nev. 2004) (citing Monell, 436 U.S. at 690-691).

Taking first the question of establishing municipal responsibility, and assuming arguendo that a constitutional violation occurred as a result of Officer Gomez's use of force[5], it is well established that evidence of inadequate training on the part of the municipality may be sufficient to both defeat a motion for summary judgment and establish municipal liability. Id. (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)).  However,

---

[5]Plaintiff alleges violations of his right to be free from unreasonable searches and seizures; violation of his right to due process; and violation of his right to be free from cruel and unusual punishment.  (Compl.¶¶ 46-49.)

1   in order to do so, Plaintiff "must provide evidence from which a reasonable jury could find

2   that there was an inadequate training program, and that the Defendant was deliberately

3   indifferent to whether its officers received adequate training.  There must also be actual

4   causation between the inadequate training and the deprivation of the Plaintiff's rights." Id.

5   (citing Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).  To this end, a

6   plaintiff must proffer actual evidence of inadequate training.  Id.  Proof of a single incident

7   of deviant official action is not enough.  Id. (citing Merritt, 875 F.2d at770).

8         Here, Defendant LVMPD argues that it is entitled to summary judgment on the

9   grounds  that Plaintiff has failed to proffer any evidence of an official policy that might be

10  causally related to Officer Gomez's use of force and any attendant constitutional

11  deprivations. (Mot. Summ. J. (#15) 8.)  Defendant LVMPD's motion notes that when asked

12  to "identify all facts supporting Plaintiff's allegation that LVMPD has an 'official policy/or

13  custom' which causes Plaintiff to sustain damages" Plaintiff referred to the facts of the

14  incident in question and stated that "discovery is continuing, and Plaintiff will supplement

15  his response to this Interrogatory as wanted."  (Mot. Summ. J. (#15) Ex. B.)  Moreover,

16  Defendant LVMPD points out that Plaintiff did not produce any evidence of prior incidents

17  of alleged police misconduct by LVMPD officers.  Id.  In response, Plaintiff offers no

18  evidence of any policy of inadequate training or supervision that could be causally related

19  to the alleged deprivations.  Instead, he submits statements regarding the extent of his

20  injuries and the diagnosis thereof. (Opp'n to Mot. Summ. J. (#17) 2.)  These assertions are

21  wholly unrelated to Defendant LVMPD's Motion for Summary Judgment and thus cannot

22  serve to refute the showing made therein.  Additionally, Plaintiff offers statements made by

23  Officer Mark Hutchinson during his deposition.  In his deposition, Officer Hutchinson, who

24  was at the scene of the alleged misconduct, states that he would not have used the same

25  level of force that Officer Gomez employed.   (Opp'n to Mot. Summ. J. (#17) Ex. 4 18.)

26  However, this statement was made in response to being asked if he, Officer Hutchinson,

knew when he saw Officer Gomez "slam" Plaintiff on the hood of the car, that such conduct was improper.  Id.  Try as the Court might, it is impossible to construe this statement as evidence of an inadequate training regimen.  Instead, it seems to be nothing more than evidence of one officer's impressions of another officer's course of conduct.  Moreover, one could construe it as evidence of the adequacy of the training offered to some officers (Hutchinson, for example) as to the acceptable level of force to be used in restraining suspects.  Consequently, this evidence also cannot be said to support the finding of a question of fact as to the existence of a policy or custom of inadequate training or supervision that led to the alleged deprivations.  Therefore, Defendant LVMPD's Motion for Summary Judgment as to Plaintiff's federal claims is granted.  Moreover, since summary judgment is warranted based on Plaintiff's failure to sufficiently create a question of fact as to the existence of a policy or custom causally related to the alleged deprivations taken as true, the Court need not consider whether a question of fact exists as to the presence of specific constitutional violations.

**2. Plaintiff's State Law Claims**

In addition to Plaintiff's federal law claims, Plaintiff asserts several claims based on Nevada state law.  Some of these are based on the acts of Officer Gomez, and some are based on the acts of the department itself.

Turning first to those claims based on the acts of Officer Gomez, Plaintiff asserts against Defendant LVMPD claims for assault, battery, false imprisonment, intentional infliction of emotional distress, negligence, negligent affliction of emotional distress and three claims based on the Nevada Constitution; these include allegations of deprivation of Plaintiff's right to due process under the Nevada Constitution, as well as violations of his right to be free from cruel and unusual punishment and unreasonable searches and seizures.  (Compl. (#1).)  Defendant LVMPD argues that it is granted immunity from these

///

11

claims by statute.  (Mot. Summ. J. (#15) 9-13.)  Plaintiff offers no assertions to the contrary. That notwithstanding, the Court reviews the relevant statute.

Under Nevada state law, any claims asserted against the State, its agencies or employees can only be pursued in the absence of governmental immunity.  Hagblom v. State of Nevada Dir. of Motor Vehicles, 93 Nev. 599, 602-603, 571 P.2d 1172, 1174-1175 (1977).  The State waives its immunity under section 41.301 of the Nevada Revised Statute, subject to the terms of N.R.S. 41.302.  N.R.S. 41.302 states in relevant part:

> [N]o action may be brought under N.R.S. 41.031 or against an immune contractor or an officer of employee of the state or any of its agencies or political subdivisions which is: based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee, or immune contractor of any of these, whether or not the discretion involved was abused.  NEV. REV. STAT. § 41.032 (2005).

"A 'discretionary act' requires personal deliberation, decision, and judgment."  Herrara, 298 F. Supp. 2d at 1054 (citing Maturi v. Las Vegas Metro. Police Dept., 110 Nev. 307, 308, 871 P.2d 932, 933 (1994); Parker v. Mineral County, 102 Nev. 593, 729 P.2d 491 (1986) (stating that the decision of how to respond to a report is discretionary and should not be "second guessed" by a court with the benefit of hindsight)).  Here, Officer Gomez stopped Plaintiff after he refused to heed his request to cross the street in the crosswalk.  (Mot. Summ. J. (#15) Ex. A 13.)  After Plaintiff's behavior became unruly and verbally aggressive, he pinned him to his patrol car.  Id. at 14-17.  Taking first the decision to stop and arrest generally, it is clear that this was discretionary.  One need only parse the language of N.R.S. 171.124 to come to such a conclusion.  N.R.S. 171.123 states that "a peace officer . . . may make an arrest in obedience of a warrant delivered to him, or may, without a warrant, arrest a person: For a public offense committed or attempted in his presence."  Nev. Rev. Stat. § 171.124(a) (2005).  The statute is clearly permissive; thus, any decision on the part of an officer to make such an arrest would necessarily require the exercise of discretion.  Here,

1   Officer Gomez chose to exercise his discretion to stop and arrest Plaintiff for jaywalking, a

2   public offense.[6]   As to Officer Gomez's use of force in detaining Plaintiff, such a decision

3   is exactly the type of "split-second judgment–in circumstances that are tense, uncertain, and

4   rapidly evolving–about the amount of force that is necessary in a particular situation" that

5   officers are routinely asked to make, and for which they are afforded immunity under

6   Nevada state law.  See Herrera, 298 F. Spp. 2d at 1054 (quoting Graham v. Connor, 490

7   U.S. 386, 396 (1989) (explaining the appropriateness of granting qualified immunity to

8   officers under the Fourth Amendment for reasonable, even if excessive, force)).  Thus, even

9   if Officer Gomez's use of force was excessive, his actions remain discretionary. See Maturi,

10  110 Nev. 307, 871 P.2d 932 (1994) (holding that arresting officers' decision to handcuff

11  behind the prisoner's back rather than in the front is discretionary and affords officers

12  immunity); Ortega v. Reyna, 114 Nev. 55, 953 P.2d 18 (1998) (holding that state trooper

13  used his judgment in stopping appellant, in concluding appellant refused to sign the traffic

14  citation, and in taking appellant to jail after arresting her); Herrera, 298 F. Supp. 2d (holding

15  that the moment by moment strategies and decisions employed by officers who ultimately

16  exercised lethal force against delusional decedent were discretionary acts).  Therefore,

17  Defendant LVMPD is immune from the claims asserted against it based on the actions of

18  Officer Gomez.

19  ///

20

21  _____

22  [6]Here, Plaintiff admits that he was crossing outside the crosswalk and that this occurred in Officer Gomez's presence.  He also admits he was cited for jaywalking, though the citation was

23  later dismissed.  (Mot. Summ. J. Ex. A 19.)  Defendant LVMP claims that jaywalking is a misdemeanor, however, it does not

24  provide a legal citation to the appropriate authority.  (Mot. Summ. J. 7.)  Las Vegas Municipal Code § 11.30.070 states that

25  "[n]o pedestrian shall cross a roadway other than in a marked crosswalk or within an unmarked crosswalk in a central traffic

26  district or in any business district."  The Court must assume that it was this provision under which the original citation was issued since the citation has not been provided.

1    Turning now to the claims brought against Defendant LVMPD directly, Plaintiff
2  asserts claims of negligent hiring and negligent training and supervision.  The availability
3  of immunity with respect to these claims is governed by the same statutory language as in
4  the case of claims based on the acts of officials or employees of the state or agency.  NEV.
5  REV. STAT. § 41.032 (2005).  Thus, the critical question is whether or not the hiring of police
6  officers and the training and supervision thereof is "discretionary."  Defendant LVMPD
7  claims that it is not.[7]  (Mot. Summ J. (#15) 14.)  The Court disagrees. "[T]he training and
8  supervision of officers is not a 'discretionary function,'" but rather an 'operational function'
9  . . . ."  Herrera, 298 F. Supp. 2d at 1055 (holding that LVMPD was not immune from state
10  law claims for negligent supervision and training).  That notwithstanding, Plaintiff has failed
11  to provide any evidence in response to Defendant's Motion for Summary Judgment, to
12  suggest that the training and/or supervision of LVMPD officers was inadequate.  See supra
13  pp. 8-9.  Additionally, Plaintiff fails to make any mention in his response of the justification
14  for his claim that Defendant LVMPD negligently hired the offending officer.  Therefore,
15  despite the fact that LVMPD is not immune as a matter of law from such claims, Defendant
16  LVMPD's Motion for Summary Judgment is granted as to Plaintiff's claims for negligent
17  hiring and negligent supervision and training.

18  **D. Plaintiff's Claims for Punitive Damages**

19    Plaintiff asserts claims for punitive damages under both 42 U.S.C. § 1983 and state
20  law. (Compl. (#1).)  Notwithstanding the fact that all Plaintiff's claims against Defendant
21  LVMPD have been dismissed, it bears noting that the Supreme Court has held that a
22  plaintiff may not recover punitive damages against a municipality because a municipality is
23  incapable of forming the necessary intent and because punitive damages serve to punish
24  the taxpayer. Id. (citing City of Newport v. Fact Concerts, Inc., 453 U.S 247, 267-68 (1981).

25

26    [7]In the alternative, Defendant LVMPD asserts that Plaintiff
    has provided no evidence of inadequate training or negligent
    hiring.  (Mot. Summ. J. (#15) 14).

Additionally, awards for punitive damages in an actions brought under N.R.S. 41.031 are precluded under Nevada state law.  See  NEV. REV. STAT. § 41.035.

### III. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Counter Motion to Defendant's Motion for Summary Judgment for Leave to Amend Complaint (#19) is DENIED.

IT IS FURTHER ORDERED that the fictitiously named defendants are DISMISSED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgement (#15) is GRANTED.

IT IS SO ORDERED.

Dated this 17TH day of January, 2007.

_____
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# APPENDIX A

Westlaw.

107 F.3d 16                                                          Page 1
107 F.3d 16, 1996 WL 726630 (C.A.9 (Cal.))
**(Cite as: 107 F.3d 16)**

**C**

Briefs and Other Related Documents

**Gripp** v. County of **Siskiyou**C.A.9 (Cal.),1996.NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.

Darrell W. **GRIPP**, Plaintiff-Appellant

v.

COUNTY OF **SISKIYOU**; City of Yreka, Defendants-Appellees.

**No. 95-16642.**

Submitted **Dec.** 11, 1996.[FN*]

FN* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.R.App.P. 34(a); 9th Cir.R. 34-4.

Decided **Dec.** 13, 1996.

Appeal from the United States District Court, for the Eastern District of California, D.C. No. CV-94-00843-DFL; David F. Levi, District Judge, Presiding. E.D.Cal.

AFFIRMED.

Before BROWNING, ALDISERT,[FN**] and BRUNETTI, Circuit Judges.

FN** Hon. Ruggero J. Aldisert, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

MEMORANDUM [FN***]

FN*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3.

OVERVIEW

**\*1** Darrell **Gripp** brought a civil rights claim under 42 U.S.C. § 1983 alleging excessive force against several police officers and failure to train against the County of **Siskiyou**. Although **Gripp** was aware of the identity of the officers, **Gripp's** attorney filed the lawsuit against "unknown" officers. The district court denied **Gripp** leave to file a second amended complaint identifying the officers by name. Left without a case against the individual officers, **Gripp's** sole action was against the County for inadequate training. The district court dismissed **Gripp's** claim on defendant County of **Siskiyou's** motion for summary judgment. **Gripp** appeals and we affirm.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## FACTS AND PROCEEDINGS BELOW

**Gripp's** complaint alleges that officers used excessive force against him when they were dispatched to his house in response to a neighbor's complaint about noise.   He alleges officers used excessive force both at his home and again when the officers transported him to the **Siskiyou** County Jail.   **Gripp** alleges that the officers caused physical harm to him including:  a fractured right elbow, torn ligaments, bruises on his arm, and abrasions.  **Gripp** further alleges that he was denied repeated requests for needed medical care.

**Gripp** showed a videotape of the alleged abuse to his attorney, who then filed suit on May 27, 1994. Although the officers' identities were easily ascertainable from the videotape, **Gripp's** attorney named only "unknown" officers in his complaint.  On September **13**, 1994, four months after filing the original suit, **Gripp's** attorney filed a first amended complaint, which again failed to name the individual officers.  On October 3, 1994, the district court issued its pre-trial scheduling order, which stated that "[n]o further joinder of parties or amendments to pleadings is permitted except with leave of court, good cause having been shown."       Status (pre-trial scheduling) Order, 10/3/94.    On December 14, 1994 **Gripp** sought leave to file a second amended complaint naming the individual officers.   This motion was denied.

## DISCUSSION

### I. *Denial of Leave to Amend*

The narrow question to be decided is "when and under what circumstances may a party join an additional defendant once the district court has entered an order limiting the time for joinder." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607 (9th Cir.1992).  **Gripp** argues that the court should liberally allow amendment under Federal Rule of Civil Procedure 15(a).   However, as the court noted in *Johnson,* once a pre-trial scheduling order has been issued, Rule 15 no longer provides the standards by which we consider **Gripp's** motion to amend. *Id.*

The court must look to the pre-trial scheduling order to determine what standards to apply to **Gripp's** motion to amend.  *Id.* at 608.  Here, the scheduling order allows joinder of additional parties only where **Gripp** can show good cause.  "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under Rule 15." *Id.* at 609 (quoting *Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C.1987).  Rather, **Gripp** can show good cause only if he can show that he could not have named the individual officers despite his diligence. *Id.*  "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**\*2 Gripp** admits he knew the identity of the officers in February of 1994, three months before his attorney filed the original suit. *See* **Gripp** Declaration at 160 [FN1]; **Gripp** Declaration, Exhibit A, "Claim Against Public Entity"; Appellant's Opening Brief at 4.[FN2] **Gripp's** only argument in his brief is that he will be prejudiced if he is not allowed to name the individual officers. A showing of prejudice, however, is not enough. Once it is shown that a party was not diligent, no amount of prejudice will satisfy the good cause standard. *Johnson,* 975 F.2d at 609.

[FN1.] Q Now, looking at the first document attached to the letter, which is the Internal Affairs report.
A Uh-huh (affirmative).
Q Okay. That's a three page-I think it's a three page-
A I have read this.
Q Goes over into four pages. You reviewed that sometime in February?
A Yes, after I received it.
Q And you were aware of-at that time, of the names of the officers identified in that document?
A Yes.

[FN2.] "At the time of the filing of the complaint, the actual names of the police and correctional officers were unknown to plaintiff's counsel although they were identified by the videotape and identified

in the complaint."

II. *Inadequate Training Claim*

In his claim against the City and County, **Gripp** alleges that his injuries resulted from a policy of using excessive force in processing individuals at the **Siskiyou** County Jail. (Am.Comp. ¶ 23.) Moreover, he alleges that both the City and the County have failed to adequately "train their officers in the proper handling of individuals to be processed at the **Siskiyou** County Jail." (*Id.*)

The inadequacy of police training may serve as a basis for liability under § 1983 only when there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989). "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. Deliberate indifference will be found where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. A claim of deliberate indifference may be established where the police have used excessive force so often, that the need for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

further training must have been plainly obvious to the city policymakers. *Id.* n. 10.

In support of his failure to train claim, **Gripp** submitted the deposition of his expert on police procedures, Mr. Gardner, and the declarations of former **Siskiyou** County officers, Mr. Martinez, and Ms. Allison. Mr. Gardner testified in his deposition that in his opinion excessive force was used against **Gripp**. He identified several procedures that should have been taken by the police officers to avoid the harm inflicted on **Gripp**.

These statements by Mr. Gardner do not establish a failure to train claim. **Gripp** must submit evidence that the City failed to adequately train its officers. "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal bias for holding the city liable." *Id.* at 391. "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id.* at 392. In this case, the fact that the individual officers failed to use the proper procedures says little about the City's liability on a failure to train claim.

**\*3 Gripp** also relies on the Martinez and Allison declarations. Martinez states that he is aware of three particular instances of inmates being mistreated. Martinez Decl. ¶ 3. He states that he was involved in one of the incidents as an officer and that he received no additional training after the incident. *Id.* at ¶¶ 3-5. Martinez also states that "[d]uring my stay in the jail, the watch commanders were fully aware of the above-noted mistreatment of inmates. Rarely would any watch commander do anything to prevent the mistreatment. At no time did the watch commanders intervene to stop the abuse of inmates." *Id.* at ¶ 7.

Allison also states that she "became aware of several instances of excessive use of force by correctional officers." Allison Decl. ¶ 3. She noted only one such incident and then concluded that she "considered Correctional Officers Eastlick and Montreuil to be bullies." Allison Decl. ¶ 3.

These specific instances of misconduct do not rise to the level of deliberate indifference. "In those cases where we have held that a question of fact existed as to the deliberately indifferent character of a municipality's failure to train, plaintiffs have alleged a program-wide inadequacy." *Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1367 (9th Cir.1994), *cert. denied by, Lennon v. Alexander,* 115 S.Ct. 735 (1995); *Reed v. Hoy,* 909 F.2d 324, 331 (9th Cir.1989), *cert. denied,* 501 U.S. 1250 (1991)). In this case, **Gripp** has not alleged such program-wide failure to train.

AFFIRMED.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

107 F.3d 16                                                          Page 5
107 F.3d 16, 1996 WL 726630 (C.A.9 (Cal.))
**(Cite as: 107 F.3d 16)**

C.A.9 (Cal.),1996.
Gripp v. County of Siskiyou
107 F.3d 16, 1996 WL 726630 (C.A.9 (Cal.))

Briefs and Other Related Documents
(Back to top)

• 1995 WL 17070020 (Appellate Brief) Defendant/Appellee City of Yreka's Brief on Appeal (Dec. 13, 1995) Original Image of this Document (PDF)
• 1995 WL 17070021 (Appellate Brief) Appellee's (Siskiyou) Brief (Dec. 08, 1995) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.